**H. J. SPRINGFIELD et al., Appellants,**

v.

**AETNA CASUALTY & SURETY INSURANCE COMPANY et al., Appellees.**

No. 13265.

Court of Civil Appeals of Texas, Austin.

Feb. 25, 1981.

Rehearing Denied March 11, 1981.

Joe K. Longley, Longley & Maxwell, Austin, for appellants.

R. B. Cousins, Thompson, Coe, Cousins & Irons, Robert M. Greenberg, Charles M. Bradshaw, Dallas, John McBryde, McBryde, Bogle & Green, Fort Worth, and Mark White, Atty. Gen., Yolanda Martin, Asst. Atty. Gen., Austin, for appellees.

PHILLIPS, Chief Justice.

This is a deceptive trade practice case. Appellants [1] maintain that appellee [2] insurers in this case have acted in concert through the entity known as the Texas Automobile Insurance Service Office (TAISO) to accomplish an unlawful and unconstitutional purpose. That purpose being the "enticement" of the State Board of Insurance to adopt a policy form, Endorsement 243, which was on its face, contrary to the provisions of Article 5.06–3,[3] Texas Insurance Code, and unconstitutional pursuant to Article I, Section 28 of the Texas Constitution.

Appellants have not sought any relief against the State Board of Insurance. They have made the Board a party to this lawsuit only because of a prior holding of the Fort Worth Court of Civil Appeals that the Board is a necessary party to this litigation.[4]

Appellants seek damages from appellees allegedly accruing from appellees' wrongful acts in conspiring to entice the Board into adopting Endorsement 243.

Appellees filed motions for summary judgment in the trial court which were granted and appellants have duly perfected their appeal to this Court.

We affirm.

In 1973, the Texas Legislature passed Article 5.06–3 mandating that all automobile liability insurance contracts contain first-party personal injury protection insurance within or supplemental to all automobile liability insurance policies issued in this state.

In connection with this new coverage, the State Board of Insurance held public hearings to promulgate the policy forms mandated by the statute. At the hearing where the content of the policy form was considered, the attorney for TAISO appeared before the Board and presented testimony and an exhibit containing TAISO's recommendation for the policy form. The Board adopted TAISO's recommendation as Endorsement 243.

TAISO is a consortium of nearly all of the automobile casualty insurance companies that operate in Texas. Appellants contend that TAISO's exhibit during the abovementioned hearing and appellees' allegedly wrong acts in conspiring to entice the Board into adopting Endorsement 243 violated the Deceptive Trade Practices-Consumer Protection Act (Tex.Bus. & Comm. Code Ann. Subchapter E, Chapter 17).

Appellants' contentions under the facts before us raise a multitude of serious questions; however, we believe that the case can be decided on a much narrower ground; namely, Endorsement 243 does not conflict with the mandates set forth in Art. 5.6–3.

I.

■ Appellants claim that exclusion three of Endorsement 243 limiting coverage to the insured vehicles and the provision for benefits for loss of income are in derogation of Art. 5.06–3, and therefore, the trial court incorrectly sustained appellees' motions for summary judgment. We disagree, and therefore, we need not and do not pass upon the applicability of the Deceptive Trade Practices-Consumer Protection Act to this case.

Article 5.06–3(f) of the Texas Insurance Code provides:

> Board of Insurance, and National County Mutual Fire Insurance Company.

1. Appellants are H. J. Springfield, Barbara A. Maxwell, Roxie C. Allen, Connie D. Barker, John T. Goodin, Amos Howard, Lloyd Ray Walling, and Glenn Wilde.

2. Appellees are Aetna Casualty & Surety Insurance Company, Trinity Universal Insurance Company, Allstate Insurance Company, Government Employees Insurance Company, Travelers Indemnity Company of Rhode Island, Continental Insurance Company, State Farm Mutual Automobile Insurance, Texas State

3. Unless otherwise designated, all statutory references are to Vernon's Annotated Texas Insurance Code.

4. See: *Allen v. Aetna Casualty & Surety Co.*, 567 S.W.2d 547 (Tex.Civ.App.1978, writ ref'd n. r. e.).

"(f) The State Board of Insurance is hereby authorized to prescribe the form, or forms, of insurance policies, including riders and endorsements, *to provide the coverage described in this article.* The Board shall also prescribe the premium rates under the provisions of this Subchapter A, Chapter 5, Texas Insurance Code. Provided, however, the foregoing provisions relative to forms and rates shall apply *only to coverage* written *to comply with this article* ; such provisions shall not apply to other accident or health policies even though they promise indemnity against automobile-connected injuries." (Emphasis added)

Article 5.06–3(b) is as follows:

"(b) 'Personal Injury Protection' consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest occupant, up to an amount of $2,500.00 for each such person for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, X-ray and dental services, including prosthetic devises, and necessary ambulance, hospital, professional nursing and funeral services, and in the case of an income producer, *payment of benefits for loss of income as the result of the accident* ; and where the person injured in the accident was not an income or wage producer at the time of the accident, payments of benefits must be made in reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household." (Emphasis added)

The only exclusions provided by the Legislature to the coverage stated above are found in Article 5.06–3(e) as follows:

"(e) An insurer shall exclude benefits to any insured, or his personal representative, under a policy required by Section 1, when the insured's conduct contributed to the injury he sustained in any of the following ways:

(1) causing injury to himself intentionally;

(2) while in the commission of a felony, or while seeking to elude lawful apprehension or arrest by a law enforcement official."

The TAISO exhibit in question contained a third exclusion to the coverage that is not in the statute. This additional exclusion is as follows:

"(b) to the named insured or any member of the insured's household who sustains bodily injury while occupying or through being struck by a motor vehicle owned by such named insured or any member of the insured's household which is not an insured motor vehicle."

This definition was accepted and approved by the Board.

Appellants call our attention to Article I, Section 28 of the Texas Constitution which provides: "No power of suspending laws in this state shall be exercised except by the legislature."

They argue that the Board has "suspended" at least a portion of the law through its acceptance and approval of appellees' insurer's recommendations of policy forms. Appellants further maintain that had the legislature wished to place any more exclusions to the coverage stated in the statute, it could have easily done so in the manner that it provided for the two exclusions listed above. Appellants cite *Unigard Security Insurance Co. v. Schaefer,* 572 S.W.2d 303 (Tex.1978), for the proposition that when specific exclusions or exceptions to a statute are stated by the legislature, the intent is usually clear that no others shall apply.

The Supreme Court rejected appellants' argument in *Holyfield v. Members Mutual Insurance Co.,* 572 S.W.2d 672 (Tex.1978). The opinion of the Dallas Court of Civil Appeals in that case, 566 S.W.2d 28, 29–30 (Tex.Civ.App.1978), disagreeing with *Western Alliance Ins. Co. v. Dennis,* 529 S.W.2d 838 (Tex.Civ.App.1975, no writ), stated:

"Neither can we agree with the Texarkana court's holding that providing coverage only for scheduled vehicles is a denial of coverage provided by Article 5.06–3(a) of the Insurance Code. While we agree that Article 5.06–3 dictates the *type* of coverage which must be provided, it does not, by its terms dictate *which* vehicles the policy must cover or prevent the insurer and insured from agreeing that only certain vehicles will be covered. An insurer is entitled to accurately reflect in the policy the risks being insured and to charge premiums based upon those risks. *See Vaughn v. Atlantic Insurance Company*, 397 S.W.2d 874 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.) *quoting Lumbermens Mutual Casualty Co. v. Pulsifer*, 41 F.Supp. 249 (D.C.Me.1941) (purpose of policy exclusion of non-scheduled vehicles is to allow premiums to be based upon *known* risks, thereby protecting insurer from increased liability occasioned by risks of which it might not be aware). This right would be frustrated, if, as Holyfield argues, an insured who owns more than one vehicle could insure and pay premiums based solely on the risk attendant to that vehicle, and thereby render the insurer liable for injuries sustained in or because of other vehicles owned by him. We cannot presume that such a result was intended. A more reasonable reading of Article 5.06–3 is that it merely requires that PIP benefits be provided; the *manner* in which benefits are provided is left to agreement between the parties. Accordingly, we hold that the exclusion in this case is valid, and that the trial court properly denied recovery under the policy." (Emphasis supplied)

In the *Holyfield* opinion, the Supreme Court refused application for writ of error and disapproved the *Western Alliance* decision and its interpretation of *Westchester Fire Insurance Co. v. Tucker*, 512 S.W.2d 679 (Tex.1974). *Unigard Security Insurance Co. v. Schaefer, supra*, does not invalidate *Holyfield*, as the question in *Unigard* was whether Form 119 constituted express written rejection of personal injury protection coverage as required by Article 5.06–3.

The Supreme Court held that Form 119, promulgated in 1941, did not constitute rejection of the mandatory personal injury protection coverage. The holding in *Unigard* does not relate to the exclusion in Endorsement 243 concerning unscheduled automobiles.

## II.

■ Article 5.06–3(b) provides personal injury protection coverage up to $2500 per person

"for payment of *all reasonable expenses* arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, *and in case of an income producer, payment of benefits for loss of income as the result of the accident ...*" (Emphasis added).

Appellants contend that this Article 5.06–3(b) provides for specific mandatory coverage while section (e) allows only two exclusions to the coverage. Under such circumstances, the Board presented yet another exclusion and though defining "benefits for loss of income" at 80% of lost income in Endorsement 243, has attempted to suspend a certain amount of coverage provided by the legislature in such Act.

Since there is no language to give the Board the power to create additional exclusions to coverage in the Act, the Board's action must be considered to be unconstitutional under Article I, Section 28, of the Texas Constitution. Again appellants rely on *Unigard* for the same argument outlined above. We do not agree.

■ The statute calls for "payment of benefits." A basic rule of statutory construction is that the intent of the legislature shall be determined from the entire statute and not isolated portions thereof. *Southwestern Investment Co. v. Mannix*, 557 S.W.2d 775 (Tex.1977). Article 5.06–3(f) states that "the Board shall also prescribe the premium rates under the provi-

sions of this subchapter A, Chapter 5, Texas Insurance Code." Under Chapter 5, the Board has the duty to "determine, fix, prescribe, and promulgate just, reasonable and adequate rates of premiums to be charged and collected by all insurers writing any form of insurance on motor vehicles in this state." Article 5.01.

Thus, the Board has authority to prescribe the rates for personal injury protection coverage, and the amount of losses actually incurred and paid is a factor to be considered in setting the premium rate. See Articles 5.03(a), 5.03(c)(2).

There is no question that the 80% benefits paid under personal injury protection coverage to insureds is correlated to and directly reflected in the premiums paid by the policyholders. The 80% figure contemplates the loss of factors such as withholding taxes and income taxes that the beneficiaries would not receive.

In our judgment, the statute is clear and the interpretation given by the Board is valid. The responsibility and *authority* for statutory interpretation was granted to the Board by the statute itself:

"(f) The State Board of Insurance is hereby authorized to prescribe the form, or forms, of insurance policies, including riders and endorsements, to provide the coverage described in this article. The Board shall also prescribe the premium rates under the provisions of this Sub-

Chapter A, Chapter 5, Texas Insurance Code." Art. 5.06–3(f).

Analysis of the endorsement reveals that the Board acted reasonably and properly in response to the legislative mandate, and that its calculation scheme, including the "80%" provision, provides full, fair and completely adequate payment for loss of income, all in perfect harmony with the statute.

However, if it could be said that the statute is ambiguous, the 64th, 65th, and 66th Legislatures have enacted legislation under Chapter 5 of the Texas Insurance Code without making any changes whatsoever in the language of Article 5.06–3. A statute of doubtful meaning that has been construed by the proper administrative officers, when reenacted without any substantial change in verbiage, will ordinarily receive the same construction. *Humble Oil & Refining v. Calvert*, 414 S.W.2d 172 (Tex. 1967).

The judgment of the trial court is in all things affirmed.